UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

Channette                                                    Civil Action No. 09-0202

versus                                                       Judge Tucker L. Melançon

Evans Operating Co., et al                                   Magistrate Judge Hanna

MEMORANDUM RULING

Before the Court is a Motion for Summary Judgment filed by defendants Neches Gulf Marine, Inc. and the M/V Goliad ("Neches Gulf") [Rec. Doc. 56], a memorandum in opposition filed by third-party defendant Seneca Resources Corporation ("Seneca") [Rec. Doc. 61], a reply memorandum filed by Neches Gulf [Rec. Doc. 68] and a sur-reply filed by Seneca [Rec. Doc. 74]. Also before the Court is Seneca's Cross Motion for Summary Judgment [Rec. Doc. 65], Neches Gulf's memoranda in opposition thereto [Rec. Docs. 77], and a reply memorandum filed by Seneca [Rec. Doc. 78] For the following reasons, Neches Gulf's motion will be denied and Seneca's motion will be granted.

*I. Background*

This is a personal injury action filed by Michael Channette, and his spouse, Sandra Ann Channette, against Evans Operating, LLP ("Evans"), Neches Gulf Marine, Inc. ("Neches Gulf"), and the M/V GOLIAD, following an alleged workplace accident that occurred on May 10, 2008 while he was transferring via personnel basket from the deck of the M/V GOLIAD to an offshore platform in East Cameron Block 205(A) in the Gulf of Mexico. *R. 1; 24; 28.* At the time of the alleged accident, Channette was employed by Roclan Services & Supply, Inc.; the crane being used for the transfer was being operated by an employee of Evans Operating, LLP; and, the M/V GOLIAD, an offshore supply vessel, was owned and operated by Neches Gulf. Seabright Insurance Company, the workers' compensation carrier for plaintiff's employer, filed a complaint in intervention seeking recovery of benefits it paid

to and on behalf of plaintiff as a result of the alleged incident. *R.38*. Neches Gulf and the M/V GOLIAD filed a third-party complaint claiming that Seneca is required to provide it with a defense and indemnity. *R. 36*.

Neches Gulf filed a motion for summary judgment against Seneca asserting that Seneca owes it defense and indemnity. *R.56*. Seneca filed a cross motion for summary judgment to dismiss Neches Gulf's third-party claims against it because there is no evidence of a contract in place at the time of plaintiff's alleged injuries which would require Seneca to defend and indemnify Neches Gulf. *R. 65*.

## II. Summary Judgment Standard

A motion for summary judgment shall be granted if the pleadings, depositions and affidavits show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Little v. Liquid Air Corp.*, 37 F.3d 1069 (5th Cir. 1994)(en banc). Initially, the party moving for summary judgment must demonstrate the absence of any genuine issues of material fact. When a party seeking summary judgment bears the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if such evidence were uncontroverted at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). As to issues which the non-moving party has the burden of proof at trial, the moving party may satisfy this burden by demonstrating the absence of evidence supporting the non-moving party's claim. *Id*. If the moving party fails to carry this burden, his motion must be denied. If he succeeds, however, the burden shifts to the non-moving party to show that there is a genuine issue for trial.[1] *Id*.

---

[1] Where the nonmoving party has the burden of proof at trial, the moving party does not have to produce evidence which would negate the existence of material facts. It meets its burden by simply pointing out the absence of evidence supporting the non-moving party's case. *Celotex Corp.,* 477 U.S. at 325. To oppose the summary judgment motion successfully, the non-moving party must then be able to establish elements essential to its case on which it will bear the burden

2

at 322-23.

Once the burden shifts to the respondent, he must direct the attention of the court to evidence in the record and set forth specific facts sufficient to establish that there is a genuine issue of material fact requiring a trial. *Celotex Corp.,* 477 U.S. at 324; Fed.R.Civ.Pro. 56(e). The responding party may not rest on mere allegations or denials of the adverse party's pleadings as a means of establishing a genuine issue worthy of trial, but must demonstrate by affidavit or other admissible evidence that there are genuine issues of material fact or law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144. 159 (1970); *Little*, 37 F.3d at 1075. There must be sufficient evidence favoring the non-moving party to support a verdict for that party. *Anderson,* 477 U.S. at 249; *Wood v. Houston Belt & Terminal Ry.,* 958 F.2d 95, 97 (5th Cir. 1992). There is no genuine issue of material fact if, viewing the evidence in the light most favorable to the non-moving party, no reasonable trier of fact could find for the non-moving party. *Lavespere v. Niagara Mach. & Tool Works, Inc.,* 910 F.2d 167, 178 (5th Cir.1990).

If no issue of fact is presented and if the mover is entitled to judgment as a matter of law, the court is required to render the judgment prayed for. Fed. R. Civ. P. 56(c); *Celotex Corp.*, 477 U.S. at 322. Before it can find that there are no genuine issues of material fact, however, the court must be satisfied that no reasonable trier of fact could have found for the non-moving party. *Id.*

### III.  Analysis

The parties do not dispute that general maritime law applies to the agreements at issue. An agreement to transport people and supplies in a vessel to and from an offshore drilling

---

of proof at trial. A complete failure of proof by the non-moving party of these essential elements renders all other facts immaterial. *Id.* at 322.

**3**

rig is a maritime contract and the construction of a maritime contract is governed by maritime law. *Great Lakes Reinsurance (UK) PLC v. Durham Auctions, Inc.*, 585 F.3d 236, 243 (5th Cir.,2009) (citing *Hale v. Co-Mar Offshore Corp.*, 588 F.Supp. 1212, 1215 (W.D. La.,1984) (J. Shaw); *See also*, *Theriot v. Bay Drilling Corp.*, 783 F.2d 527, 538 (5th Cir.,1986). Under federal maritime law, "[a] contract of indemnity should be construed to cover all losses, damages, or liabilities which reasonably appear to have been within the contemplation of the parties, but it should not be read to impose liability for those losses or liabilities which are neither expressly within its terms nor of such a character that it can be reasonably inferred that the parties intended to include them within the indemnity coverage." *Bross v. Chevron U.S.A., Inc.*, 2009 WL 2579097, 5 (W.D.La.,2009) (J. Doherty) (citing *Fontenot v. Mesa Petroleum Co.*, 791 F.2d 1207, 1214 (5th Cir.1986). A maritime contract containing an indemnity agreement should be read as a whole and its words given their plain meaning unless the provision is ambiguous. *Becker v. Tidewater, Inc.*, 586 F.3d 358, 369 (5th Cir.,2009). The duty to indemnify and hold harmless includes the payment of costs and attorney's fees. *Lirette v. Popich Bros. Water Transport, Inc.*, 699 F.2d 725, 728 (5th Cir.,1983).

In its motion for summary judgment, Neches Gulf contends that under the Master Time Charter Agreement dated November 1, 1993 ("1993 Master Time Charter Agreement"), Seneca agreed to defend, indemnify and hold Neches Gulf harmless for "any claims, demands or lawsuits brought by or on behalf of employees of Seneca or employees of Seneca's subcontractors ... and whether caused in whole or in part by the joint or concurrent negligence or strict liability, statutory or otherwise, of Neches Gulf or by the equipment of Neches Gulf." *R. 36*. Neches Gulf also contends that Seneca agreed to "procure and continuously maintain in full force and effect throughout the term of the

4

agreement, comprehensive general liability insurance, including contractual liability insurance covering Seneca's obligations under the agreement." *Id.* at 2. Alternatively, Neches Gulf claims that an agreement between Kevin Gros Consulting & Marine Services, Inc. and Seneca ("Gros-Seneca Time Charter"), in which Seneca agreed to indemnify, defend, and hold harmless the "owner and the vessel," provides Neches Gulf defense and indemnity through its ownership of the M/V GOLIAD. *Id.*

Seneca argues in its cross motion for summary judgment that the 1993 Master Time Charter Agreement expired by its own terms in 1993, and therefore, is not applicable to the charter of the M/V GOLIAD or in effect on May 10, 2009, the date of the alleged accident. As to Neches Gulf's alternative argument, Seneca argues that there is no evidence to establish that the Gros-Seneca Time Charter requires Seneca to defend or indemnify Neches Gulf.

*A. The 1993 Master Time Charter Agreement*

The record provides that Neches Gulf and Seneca entered into a Master Time Charter Agreement on November 1, 1993 ("Master Agreement"). The Master Agreement states in pertinent part:

> "ARTICLE 1 - CANCELLATION"
> This Master Time Charter Agreement (" Master Agreement") shall control and govern each short Form Time Charter Agreement 'Short Form', (attached hereto as Exhibit "A") entered into between CHARTERER and OWNER which incorporates this Master Agreement by reference...."
>
> "ARTICLE 2 - CHARTER"
> This Master Agreement does not obligate OWNER to charter its vessels to CHARTERER, nor does it obligate CHARTERER to hire any vessel of [sic] vessels owned by OWNER, but it, together with any short Form between OWNER and CHARTERER of even or later date herewith, shall govern the respective rights and duties of OWNER and CHARTERER.
>
> . . .

**5**

"ARTICLE 14 - CHARTER'S INDEMNITIES"
 Neither OWNER, its officers, directors, employees, joint venturers, the vessel, her owners, operators, master, and crew...shall have any responsibility or liability for any claim involving damages to or loss of any cargo and/or equipment carried by the vessel, or for any injury, illness, disease, loss of services or wages, or death or employees of CHARTERER, its subcontractors, joint ventures or their employees or agents, arising out of or connected with this Master Agreement, and CHARTERER shall defend, indemnify and hold harmless OWNER, its officers, directors, employees, the vessel, its owners, operators, master, and crew, and the underwriters of each of the foregoing from and against any such claim, whether groundless or not, and whether caused in whole or in part by the joint or concurrent negligence or strict liability, statutory or otherwise, faults of indemnities or by unseaworthiness of the vessel or by the equipment of the OWNER, OWNER's property and OWNER's sub-contractors' property, but excluding such loss or damage which results from the sole or gross negligence or willful misconduct of the indemnities. It is expressly understood that CHARTERER shall insure its obligations assumed under this paragraph.

*R. 56, Exh. D.*

"Exhibit A, Short Form," attached to the Master Agreement provides the work order for the charter of the M/V GOLIAD. The Short Form states that the Neches Gulf agreed to time charter or perform towing services for Seneca and Seneca agreed to hire the M/V GOLIAD beginning on November 4, 1993 for a period of 7 to 14 days. *Id.* The "Cancellation Terms" state that the agreement was terminated "[o]n completion of work." *Id.*

Seneca points the Court to the June 10, 2010 affidavit of its Deputy General Counsel, Don Butler. *Id., Exh. C.* Butler states that the Master Agreement requires an unexpired Short Form to be effective. *Id.* Butler further states that because was no Short Form agreement, nor any other agreement, between Neches Gulf and Seneca which was applicable to this case on May 10, 2008 or applied to the work in question," Neches Gulf is not entitled to defense and indemnity based on the 1993 Master Agreement and the attached Short Form. In support of its position that the 1993 Master Agreement applies to the accident in question, Neches Gulf points to correspondence between Butler and HUB International South Limited dated

6

from November 12, 2009 to December 4, 2009. *R. 70, Exhs. H-J*. Neches Gulf contends that the correspondence establishes that "Seneca believes the 1993 [Master Agreement] is in full force and effect, and governs this situation." *R. 68*.

Charter party agreements are essentially contracts and they are subject to the general rules of contract law. *Marine Overseas Services, Inc. v. Crossocean Shipping Co., Inc.*, 791 F.2d 1227, 1234 (5th Cir.,1986) (citing G. Gilmore & C. Black, The Law of Admiralty § 4-1 at 196 (2d ed. 1975) ("since most points of charter law involve construction of the charter, the principles are much the same as those of ordinary contract law")). The interpretation of an indemnity provision in a maritime contract is ordinarily governed by federal maritime law. *Corbitt v. Diamond M. Drilling Co.*, 654 F.2d 329, 332 (5th Cir., 1981). Under federal maritime law a court may not look beyond the written language of the document to determine the intent of the parties unless the disputed contract provision is ambiguous. *Id. at* 332 -333 (The district court properly refused to consider parol evidence of the parties' intentions and focused solely on the unambiguous language of the Purchase Order). Based on the clear and unambiguous language of the 1993 Master Agreement and the Short Form, which was attached and made a part thereof, the terms and obligations under the Master Agreement terminated in November 1993 on completion of the work contracted under the Agreement.[2] Neches Gulf has provided no evidence in support of its contention that the 1993 Master Agreement continued to be in effect on the date of the alleged accident, May 10, 2008, more than 14 years after it terminated by its own terms. Accordingly, the 1993 Master

---

[2] Seneca filed an opposition to the use of parole evidence in interpreting the Agreements in this case. *R. 75*. As the Court finds that the pertinent language in the 1993 Master Agreement, and attached Short Form is unambiguous, evidence to establish the intent of the Agreement may not be considered by the Court, and therefore, the correspondence between Butler and HUB International South Limited will not be considered.

Agreement does not require Seneca to defend and indemnify Neches Gulf for the alleged injury in this case.

*The Gros-Seneca Time Charter*

Neches Gulf contends alternatively that Seneca owes it defense and indemnity under a Master Time Charter Agreement entered into on September 11, 2006 between Kevin Gros Consulting & Marine Services, Inc. and Seneca ("the Gros-Seneca Time Charter"). *R. 56, Exh. A*. Page 1 of the Gros-Seneca Time Charter states that the "Master Agreement" is "by and between Kevin Gros Consulting & Marine Services, Inc. (Hereinafter referred to as 'OWNER') and Charterer 'Seneca Resources Corporation' Attn: Don Butler ... (hereinafter referred to as 'CHARTERER.')."

The Gros-Seneca Time Charter provides in pertinent part:

1. CANCELLATION. This Master Agreement shall control and govern each Short Form Time Charter Agreement ("Short Form") entered into between CHARTERER and OWNER which incorporates this Master Agreement by reference. Either party may cancel the Master Agreement upon the giving of thirty (30) days prior written notice to the other; provided, however, that any unexpired Short Form shall continue in effect subject to the terms and conditions thereof until expiration of the term specified in such Short Form.
. . .

2. CHARTER. This Master Agreement does not obligate OWNER to charter its vessels to CHARTERER, nor does it obligate CHARTERER to hire any vessel or vessels owned by OWNER, but it, together with any Short Form between OWNER and CHARTERER, of even date or dated subsequent to the date hereof, shall govern the respective rights and duties of OWNER and CHARTERER.

   If a Short Form is entered into between CHARTERER and an affiliate of OWNER, then it shall be considered for all purposes that such affiliate is a party to this Master Agreement and that it has adopted, ratified, and confirmed all the terms and provisions of this Master Agreement, insofar as it is applicable to the vessel chartered under such Short Form.

**8**

> This Master Agreement and the Short Form contemplated herein (Exhibit "A") ... shall constitute the entire agreement between the parties of the charter of vessels by OWNER to CHARTERER, in the absence of a separate time charter on a specific vessel and the terms and provisions hereof shall *ipso facto* apply to the charter of any vessel to CHARTERER by OWNER in the absence of any such separate time charter on a specific vessel. The terms and provisions of this Master Agreement shall not, however, be applicable to the charter of any vessel upon which such a separate time charter is executed.
>
> . . .
>
> 23. CHARTERER'S INDEMNITY OBLIGATIONS TO OWNER. CHARTERER shall indemnity, defend and hold OWNER and the Vessel harmless from and against any and all claims, demands, causes of action or suits, and damages, including attorneys' fees and costs, for personal injury or death (including any survivor's action) brought by or on behalf of any agents, employees, or representatives of CHARTERER, or any subcontractor of CHARTERER, or any third-party invited aboard the Vessel by CHARTERER. All of the aforementioned shall apply whether occasioned, caused or brought about in whole or in part by the negligence, fault or strict liability of OWNER, its agents or employees, or by any condition or unseaworthiness of the Vessel.

On May 8, 2008, a Short Form "Charter Agreement" was signed by Kevin Gros in which the M/V GOLIAD, the subject vessel owned by Neches Gulf, was chartered to work for Seneca. *R. 56, Exh. B, Charter Agreement.* Neches Gulf contends that Seneca is required to indemnify Neches Gulf under the Gros-Seneca Time Charter based on the following provisions: 1) Article 2 which states, "in the absence of a separate time charter on a specific vessel and the terms and provisions hereof shall *ipso facto* apply to the charter of any vessel to CHARTERER by OWNER in the absence of any such separate time charter on a specific vessel;" and 2) Article 23, the indemnity provision, which states that "CHARTERER shall indemnity, defend and hold OWNER and the Vessel harmless." *R. 56, Exh. A, Arts. 2; 23.* Neches Gulf argues that the foregoing language "clearly shows that the indemnity by Seneca is in favor of the **actual owner** of the vessel chartered" and that if the Gros-Seneca Time

9

Charter was not intended to apply to all vessels chartered by Gros, regardless of whether owned by Gros or a third party, then the language is redundant and meaningless. Neches Gulf also cites the May 21, 2010 affidavit of Byron Allemand, the Vice-President and Chief Financial Officer of Kevin Gros Consulting & Marine Services, Inc., who states,"the indemnity from Seneca Resources Corporation, as provided for in the Agreement, was supposed to 'pass through' to the actual Owner of the vessel." *R. 77, Exh. E, Aff. Of Allemand.*

Initially, the Court finds, and the parties agree, that the language in the pertinent provisions of the Gros-Seneca Time Charter is unambiguous, obviating the need for parol evidence.[3] *Corbitt*, 654 F.2d at 332-33 (citing *Hicks v. Ocean Drilling and Exploration Co.*, 512 F.2d 817, 825 (5th Cir. 1975)). The Gros-Seneca Time Charter clearly states and identifies the "CHARTERER" as Seneca and the "OWNER" as Kevin Gros Consulting & Marine Services, Inc. Neches Gulf is neither identified in the agreement, nor is there language stating that Neches Gulf is a party to the agreement. Contrary to Neches Gulf's contention that the language clearly shows Seneca owes it indemnity as the "actual owner" of the M/V GOLIAD, the term "actual owner" is not used in the agreement. Article 2 of the Agreement does provide, however, that "an affiliate of OWNER" is considered a party to the Master Agreement. If "OWNER" means the actual owner of any vessel, there would be no reason to specifically provide that the "OWNER" under the agreement may be an affiliate of Kevin Gros Consulting & Marine Services, Inc.

In *Ray v. Global Industries, Ltd*., 2006 WL 305964, 1 (W.D.La.,2006) (J. Tremble)

---

[3] Seneca filed an opposition to the use of parole evidence in interpreting the Agreements in this case. *R. 75.* As the Court finds that the pertinent language in the Gros-Seneca Time Charter is unambiguous, evidence to establish the intent of the Agreement may not be considered by the Court, and therefore, the affidavit of Allemand will not be considered.

the court considered a Charter Agreement between Kevin Gros Consulting & Marine Services, Inc., identified as "CHARTERER," and the owner of the vessel at issue, Global Industries Ltd., identified as "OWNER." As in this case, the Master Time Charter agreement in *Ray* provided that CHARTERER was to defend and indemnify OWNER. Gros argued that the Charter Agreement did not apply to it because Gros had functioned as a "boat broker" rather than a "charterer" with respect to the vessel. In holding that the Charter Agreement and its provisions were applicable, the court stated,

> The indemnity provisions unequivocally obligate Kevin Gros Consulting to defend and indemnify Global for claims asserted by anyone other than Global's own employees ... there is nothing in the Charter Agreement that obligates anyone other than Kevin Gros Consulting to indemnify and defend Global.

*Id.* at 2.

Similarly in this case, the Gros-Seneca Time Charter solely identifies Gros as the owner and there is an absence of language identifying any other party being covered under the terms of the contract. Thus, Neches Gulf has no claim against Seneca under the Gros-Seneca Time Charter Agreement.

*Conclusion*

Based on the clear, unambiguous language in the 1993 Master Agreement and the attached Short Form as well in as the Gros-Seneca Time Charter, Seneca does not owe defense and indemnity to Neches Gulf. Accordingly, Neches Gulf's motion will be denied and Seneca's motion will be granted.